1

2

3

4

5

6                      IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   Kay Lewis,                          )   No.  CV-12-8073-PCT-SRB (DKD)
                                         )
10              Petitioner,              )
                                         )
11  vs.                                  )   **REPORT AND RECOMMENDATION**
                                         )
12  White Mountain Apache Tribe,         )
                                         )
13              Respondent.              )
                                         )

14

15  TO THE HONORABLE SUSAN R. BOLTON, U.S. DISTRICT JUDGE:

16          Petitioner Kay Lewis filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.

17  § 2241 and the Indian Civil Rights Act, 25 U.S.C. § 1303, challenging the White Mountain

18  Apache Tribe's ("Tribe") denial of his bid to run for the office of Tribal Council Member.

19  Lewis contends that Respondents[1], members of the White Mountain Apache Tribal Council,

20  have conspired with others to violate his constitutional rights by depriving him of his liberty to

21  run for office.  He argues that the loss of liberty amounts to a criminal "detention" because it

22  involves the stripping of liberty rights by governmental action without due process of law under

23  25 U.S.C. § 1302(a)(8).  The White Mountain Apache Tribe moved to dismiss the petition with

24  prejudice pursuant to FED. R. CIV. P. 12(b)(1) and (6) (Doc. 6).  Petitioner subsequently

25  amended his petition, replacing the Tribe as the named respondent with the names of members

26

27  ─────────────────────

28          [1]Gregg Henry, Clinton Kessay, Jr., Kino Kane, Theresa Larzelere, Arnold Beach, Alvin
    Declay, Sr., Kino Torino, Cline Griggs, Sr., and Justin Williams.

1   from the Tribal Council.  Legal counsel for the Tribe on behalf of the Respondents thereafter

2   moved to dismiss the amended petition.[2]   For the reasons discussed below, the Court

3   recommends that the Motion to Dismiss the Petition be denied as moot, that the Motion to

4   Dismiss the Amended Petition be granted, and that the Amended Petition be dismissed with

5   prejudice.

6                                        **BACKGROUND**

7        Petitioner is a member of the White Mountain Apache Tribe located on the Fort Apache

8   Reservation in northeastern Arizona (Doc. 11, Exh D).  Respondents are also members of the

9   Tribe and serve on the Tribal Council, the Tribe's governing body (*Id*., Exh H).  Petitioner

10  sought to become a certified candidate for the office of Tribal Council Member in the Tribe's

11  April 2012 general election (*Id*., Exh C).  This controversy stems from a dispute over the Tribal

12  Election Commission's findings that Petitioner did not meet the qualifications to become a

13  certified candidate on the April 2012 ballot (Doc. 8).  Petitioner alleges that Respondents have

14  conspired to keep his name off of the ballot, resulting in a violation of his constitutional rights

15  by depriving him of his liberty to run for office (*Id*.).  Petitioner contends that the loss of liberty

16  to run for office amounts to a criminal "detention"[3] for purposes of review under the Indian

17  Civil Rights Act ("ICRA") (*Id*.).

18       The White Mountain Apache Tribe is organized under a constitution approved by the

19  Secretary of the Interior in 1993 pursuant to 25 U.S.C. § 476, the Indian Reorganization Act of

20  1934 (Doc. 11, Exh H).  Under the Tribe's Constitution, the Tribal Council is granted the

21  "power to prescribe ordinances governing the conduct of referendums and elections" (*Id*. at p.

22  7).  According to the Tribe's Constitution, "[s]uch ordinances shall prescribe the duties of the

23

24       [2]The Court is aware that Petitioner failed to seek the required leave prior to filing his
25  Amended Petition.  However, in the interest of judicial economy, the Court will accept the
    Amended Petition and recommend its dismissal.

26       [3]The terms "detention" and "custody" are used interchangeably in this Report and
27  Recommendation.

28                                        - 2 -

election board, procedures for casting and canvassing resident and non-resident ballots, method for challenging right to vote, conduct and results of elections, and settlement of any election disputes" (*Id*.).

The Tribal Council enacted the White Mountain Apache Tribe Election Code ("Election Code") in 1997 (*Id*., Exh B).  Under the Election Code, the Tribal Election Commission ("Commission") was established (*Id*., Exh B).  Among other things, the Commission was given the authority to promulgate election rules and regulations, review the qualifications of candidates through an application process, and to disqualify candidates not meeting the qualifications established by the Tribe's Constitution (*Id*.).  Thus, the Commission has the duty to verify that candidates meet the qualifications for office (*Id*.).

As part of the election process, applicants must submit to the Commission an affidavit demonstrating that they possess the qualifications for the office sought (*Id*., Exh B).  Among the various qualifications for a position on the Tribal Council, a candidate must demonstrate that he or she resides, owns cattle, or has farm land assigned within the district that he or she is to represent (*Id*., Exh. H).[4]

After verifying the qualifications from the affidavit, the Commission then issues nomination petitions to the applicant (*Id*., Exh B).  The petitions must be signed by at least five

---

[4]Article XII , Section 1 of the Tribe's Constitution states the full requirements for a position on the Tribal Council:

> Any member of the Tribe who has reached the age of twenty-five years, and who can speak Apache, and who is a resident of the district which he or she is to represent, or who operates cattle within the said district or who has farm land assigned to him or her in said district, shall be qualified to be a candidate for election to the Council.  No person who has been convicted of a felony shall be eligible to hold office in the Council.  No person who within the past year preceding the election has been convicted of a crime involving moral integrity, shall be eligible to hold office in the Council.  The following crimes, and no others, shall be considered crimes involving moral integrity:  adultery, bribery, embezzlement, extortion, fraud, forgery, misbranding, perjury, theft or public intoxication.

percent of the resident eligible voters of the district in which the applicant seeks to be a candidate (*Id.*).  The Election Code states that "[a]ll persons found by the Commission to meet the requirements . . . shall be certified by the Tribal Council as a candidate for the office indicated in such petition" (*Id.*, Exh B).

Seeking to become a certified candidate for the office of Tribal Council Member in the April 2012 general election, Petitioner submitted his application to the Commission on December 7, 2011 (*Id.*, Exh D).  Included in his application were numerous documents and the required Affidavit of Qualifications for Tribal Council (*Id.*).  Respondents claim that the Commission administratively found that Petitioner failed to comply with the Election Code requirement that an applicant provide corroborating documentation to verify that he or she meets the qualification criteria (Doc.10 at 6).  Specifically, Respondents contend that Petitioner failed to provide documentation that he "operates cattle" within the District (*Id.*).  The Commission's findings were accepted by the Tribal Council and Petitioner was not certified as a candidate (*Id.*, Exh 3).  Consequently, a resolution passed by the Tribal Council on December 28, 2011 listed those individuals who were found to meet the criteria set forth in the Election Code and Tribal Constitution (*Id.*).  Petitioner was not among the listed individuals (*Id.*).  Respondents contend that after the Commission reports its fact-finding regarding candidate applications, the Tribal Council has the exclusive constitutional authority and duty to certify those candidates who qualify for the position (Doc. 10 at 8).

Petitioner sought and obtained a hearing in the Tribal Court, challenging the Commission's findings and the Tribal Council's refusal to certify him as a candidate (Doc. 8 at 3, ¶ 12).  Petitioner maintains that he meets all of the qualifications for registering as a candidate for Tribal Council Member and alleges that his name was left off of the ballot as a result of political corruption (Doc. 8 at 2-3).  On January 13, 2012, Judge Armstrong issued an order directing the Commission to add Petitioner's name to the ballot (Doc. 13, Exh A).  The Tribal Court found that Petitioner had "met all requirements of the White Mountain Apache Tribe Constitution and Bylaws and shall no further be denied opportunity as a candidate for

elective office" (*Id*.).  The Commission objected to the Tribal Court's ruling but nevertheless submitted the Petitioner's name to the Tribal Council for certification (Doc. 10 at 7).  Despite the Tribal Court's Order, the Tribal Council did not certify Petitioner as a candidate for the election (*Id*.).  Respondents contend that the Tribal Council has the exclusive constitutional authority to certify candidates and the Tribal Court's Order exceeded its limited jurisdiction over election matters (Doc. 10 at 8).

On January 18, 2012, Tribal Attorney Richard Palmer submitted a letter to Judge Armstrong notifying him of Palmer's intention to recommend to the Tribal Council that Judge Armstrong be removed from his position as Tribal Court Judge (Doc. 11, Exh C).  Among other things, Palmer alleged that Judge Armstrong had willfully disregarded the Tribal Judicial Code and ignored and usurped "the will of the Tribal Council and undermined the Election Commission, thereby creating a situation in which the integrity of the 2012 Election is now in question" (*Id*.).

On January 26, 2012, Judge Armstrong issued an order to the Commission to cease and desist the primary election scheduled for February 1, 2012, because it had "failed to recognize a decision by [the Tribal] Court" to include Petitioner as a candidate for the election (Doc. 13, Exh A).  He also scheduled a hearing with members of the Commission to hold them in contempt of court for failure to adhere to the Tribal Court's order on January 13, 2012 (*Id*.).  Notwithstanding the cease and desist order, the Tribal Council proceeded with the primary election on February 1, 2012 (Doc. 10 at 9).  Petitioner's name did not appear on the ballot (*Id*.).  The general election was held on April 4, 2012 (*Id*.).  The Tribal Council accepted the election outcome and the winning candidates were sworn into office on May 2, 2012 (*Id*.).  On May 4, 2012, the Tribal Council passed a resolution suspending Judge Armstrong from his position as a judge on the Tribal Court (Doc. 11, Exh A).

The record reveals that appeals within the Tribal Court are ongoing (Doc. 10 at 11).  The Tribal Court's order to the Commission to submit Petitioner's name to the Tribal Council for certification has been appealed by the Commission (*Id*.).  In the appeal, the Commission

1   contends that the Tribal Court's assertion of jurisdiction over the election process was a

2   violation of Tribal Law.  The appeal also challenges the Tribal Court's determination that,

3   contrary to the Commission's fact-finding, Petitioner had provided sufficient corroborating

4   documentation to verify his qualifications as a candidate.  Furthermore, the Tribal Council is

5   in the process of appointing members to the appellate panel (Doc. 9 at 4).  Despite the removal

6   of Judge Armstrong from the Tribal Court, Petitioner still maintains his right of appeal to a

7   higher Tribal Court once an appellate panel is appointed.

8          On April 16, 2012, Petitioner filed a petition for writ of habeas corpus under § 1303 of

9   the ICRA (Doc. 1).  The Tribe moved to dismiss the petition pursuant to FED. R. CIV. P.

10  12(b)(1) and (6) (Doc. 6).  Petitioner subsequently amended his petition, replacing the Tribe as

11  the named respondent with the names of members from the Tribe's Tribal Council (Doc. 8).

12  Respondents thereafter moved to dismiss the amended petition (Doc. 10). Petitioner contends

13  that he has exhausted all tribal remedies and that members of the Tribal Council have violated

14  his constitutional rights by depriving him of his liberty to run for office.  He argues that the loss

15  of liberty amounts to a criminal "detention" because it involves the stripping of liberty rights

16  by governmental action without due process of law under 25 U.S.C. § 1302(a)(8) (Doc. 8, ¶¶

17  17, 18).  He now asks this court to issue an order nullifying the existing election results and, by

18  injunction, mandate a free election process for the Tribe.  The question the Court must decide

19  is whether a federal district court has subject matter jurisdiction to examine the merits of

20  Petitioner's claim in a federal habeas proceeding.  The Court concludes that it does not.[5]

21                                      **DISCUSSION**

22          The party invoking federal court jurisdiction bears the burden of establishing its

23  existence.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04 (1998).  Federal

24  courts have long recognized that Indian tribes are distinct political entities retaining inherent

25  _____

26          [5]In the Amended Motion to Dismiss, Respondents again argue that Petitioner has named
    the wrong parties.  In light of the basis for the Court's recommendation, it need not address this
27  issue.

28                                      - 6 -

powers to manage internal tribal matters. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 55 (1978) (citations omitted).  With the passage of the ICRA, however, Congress sought to apply basic constitutional norms to tribal governments.  *Id*. at 57-58.  The ICRA states that Indian tribes exercising powers of self-government shall not "deny to any person within its jurisdiction equal protection of its laws or deprive any person of liberty or property without due process of law."  25 U.S.C. § 1302(a)(8).  Section 1303 of the ICRA provides the only federal court procedure for the enforcement of the substantive guarantees in § 1302.  *Santa Clara Pueblo*, 436 U.S. at 58.  It states that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his *detention* by order of an Indian tribe."  25 U.S.C. § 1303.  (emphasis added).

A federal court has no jurisdiction to hear a petitioner's claim for habeas corpus under § 1303 unless the petitioner is (1) in custody and (2) has exhausted all tribal remedies.[6]  *Jeffredo v. Macarro*, 599 F.3d 913, 918 (9th Cir. 2010).  One seeking to invoke federal jurisdiction under § 1303 must demonstrate "'a severe actual or potential restraint on liberty.'"  *Id*. at 919 (quoting *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 880 (2nd Cir. 1996)).  The Ninth Circuit has held that such restraint or "detention" as provided in the ICRA must be interpreted similarly to the "in custody" requirement in other habeas contexts.  *Id*. at 918.  *See also Moore v. Nelson*, 270 F.3d 789, 791 (9th Cir. 2001) ("There is no reason to conclude that the requirement of 'detention' set forth in the Indian Civil Rights Act § 1303 is any more lenient than the requirement of 'custody' set forth in the other habeas statutes."  (citation omitted)).  Therefore, federal jurisdiction for an ICRA habeas petition is only proper when the petitioner is in custody.  *Jeffredo*, 599 F.3d at 918 (citing *Moore*, 270 F.3d at 791).  *See also Shenandoah v. U.S. Dept. of Interior*, 159 F.3d 708, 714 (2nd Cir. 1998) ("Habeas relief does address more

---

[6]Because of the Court's conclusion regarding the requirement of detention, it need not discuss the issue of exhaustion.

than actual physical custody, and includes parole, probation, release on one's own recognizance pending sentencing or trial, and permanent banishment."

Petitioner relies primarily on *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2nd Cir. 1996), to advance his argument that "incarceration" is not necessarily the only restraint of liberty that justifies federal habeas corpus relief (Doc. 11 at 3). In *Poodry*, members of the Tonawanda Band of Seneca Indians petitioned for writs of habeas corpus under the ICRA after they were convicted of treason and sentenced to permanent banishment from the Tonawanda Reservation. *Id*. at 876. The Western District of New York dismissed the case for lack of subject matter jurisdiction, concluding that the threat of permanent banishment was not a sufficient restraint on liberty to trigger application of the ICRA's habeas corpus provision. *Id*. The Second Circuit Court of Appeals vacated the orders of dismissal and remanded the case. *Id*. The court of appeals held that actual physical custody was not a jurisdictional prerequisite for federal habeas review under the ICRA. *Id*. at 893 (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)). The court of appeals concluded that banishment was a severe and sufficient restraint on liberty so as to permit a district court to review an application for writ of habeas corpus. *Id*. at 895. It also noted that the district court had ignored several important, uncontested factual allegations. *Id*. Specifically, petitioners were subject to intimidation, assault, and threats. *Id*. There were also attempts to forcibly remove petitioners from the reservation and deny them electrical service. *Id*. The court of appeals concluded by noting that "the existence of the orders of permanent banishment alone–even absent attempts to enforce them–would be sufficient to satisfy the jurisdictional requirements for habeas corpus." *Id.*

The Ninth Circuit Court of Appeals thoroughly examined the meaning of "detention" in *Jeffredo v. Macarro*, 599 F.3d 913 (9th Cir. 2009). In *Jeffredo*, former tribe members petitioned for writs of habeas corpus under the ICRA after they were disenrolled from the Pechanga Band of the Luiseño Mission Indians. *Id*. at 914. Petitioners made three arguments, claiming that actual restraints, potential restraints, and the loss of their Pechanga identity amounted to an unlawful detention under § 1303. *Id*. at 918.

- 8 -

First, the *Jeffredo* petitioners claimed that as a result of their disenrollment in the tribe, they had experienced actual restraints because they were denied access to certain facilities and services on the reservation. *Id*. at 918-19. As in *Poodry*, the court of appeals in *Jeffredo* relied on *Jones v. Cunningham* in stating that conditions and restrictions must significantly restrain one's liberty in order to invoke § 1303 jurisdiction. *Id*. at 919 (*citing Jones*, 371 U.S. at 243). However, the court of appeals held that the denial of access to facilities did not amount to the severe restraints on liberty as seen in *Poodry*. *Id*. at 919. Unlike *Poodry*, the *Jeffredo* petitioners had not been "convicted of treason, sentenced to permanent banishment, [or] permanently lost any and all rights afforded to tribal members." *Id*. (citing *Poodry*, 85 F.3d at 876, 878). Petitioners also claimed that, as non-members, they were subject to potential restraints because they were under constant threat of banishment. *Id*. at 919. The court of appeals noted that no other court has held that the threat of confinement is sufficient to satisfy the detention requirement of § 1303. *Id. See also Edmunds v. Won Bae Chang*, 509 F.2d 39, 40-41 (9th Cir. 1975) (denying habeas relief under 28 U.S.C. §§ 2241, 2254 where a court-imposed fine could be enforced by jail time). Thus, the court of appeals found that denial of access to tribal facilities as well as the threat of future eviction were not sufficient restraints to satisfy the detention requirement of § 1303. *Id*. at 919, 920.

Finally, the *Jeffredo* petitioners claimed the stripping of their Pechanga citizenship as a result of disenrollment was such a significant restraint on their liberty that it constituted a detention. *Id*. at 920. While the court was sympathetic to the argument, it found "no precedent for the proposition that disenrollment alone was sufficient to be considered detention under § 1301." *Id*. The court noted that "[w]hile 'Congress' authority over Indian matters is extraordinarily broad . . . the role of courts in adjusting relations between and among tribes and their members [is] correspondingly restrained." *Id*. (quoting *Santa Clara Pueblo*, 436 U.S. at 71). Further, the court stated that a tribe's right to define the requirements of membership was "central to its existence as an independent political community." *Id*. (internal quotations

1  omitted). The court of appeals concluded by stating that "in the complete absence of precedent,
2  we cannot involve the courts in these disputes." *Id*.

3         While Petitioner relies on *Poodry*, the decision in *Jeffredo* guides this Court's decision.
4  Like *Jeffredo*, Petitioner here makes a novel argument by asking this Court to expand the
5  meaning of "detention" beyond existing precedent. The Court cannot do so. While the record
6  reveals clear internal conflict between the Tribal Council, the Commission, and the Tribal
7  Court, the refusal to certify Petitioner as a candidate for the Tribal Council election is simply
8  not equivalent to a detention under § 1303. As precedent demonstrates, a writ of habeas corpus
9  is a measure reserved for only the most severe restraints on individual liberty—restraints that
10 amount to detention. *Hensley v. Mun. Court, San Jose Milpitas Judicial Dist., Santa Clara*
11 *County, California*, 411 U.S. 345, 351 (1973).

12        Petitioner has not had a severe restraint on his liberty. He has not been banished from
13 the tribe, convicted of a crime, or subjected to any form of physical custody or arrest. Further,
14 he has not been completely stripped of his rights as a member of the Tribe. Rather, Petitioner
15 maintains all the rights and privileges of membership within the White Mountain Apache Tribe.
16 While Petitioner was precluded from running for the office of Tribal Council Member in *one*
17 election, he has not been barred from running in future elections. No court has held that a
18 petitioner's inability to run for office in one election is such a severe limitation on liberty that
19 would rise to the level of a detention. Therefore, the Court does not have subject matter
20 jurisdiction to examine Petitioner's habeas claim.

21        *Jeffredo* is also helpful in examining Petitioner's argument that he has been stripped of
22 his right to run for office without due process of law. A tribe's right to define the qualifications
23 for an office within the tribal government is similar to its right to define its own membership—it
24 is central to a tribe's "existence as an independent political community." *Santa Clara Pueblo*,
25 436 U.S. at 71 (citing *Roff v. Burney*, 168 U.S. 218 (1897)). Likewise, the administrative
26 procedures put in place to determine whether an applicant meets the qualifications for tribal
27 office are equally important to a tribe's political independence and sovereignty. This Court

28

does not have the authority or jurisdiction to question the Commission's factual findings that Petitioner did not qualify for the office of Tribal Council Member. *See Smith v. Confederated Tribes of Warm Springs Reservation of Oregon*, 783 F.2d 1409, 1412 (9th Cir. 1986) ("Federal Courts must avoid undue or intrusive interference in reviewing Tribal Court procedures.").  As noted by the Ninth Circuit in *Jeffredo*, "despite the novelty of this approach and despite the potential injustice of this situation, we nonetheless lack subject matter jurisdiction to consider this claim because [Petitioner] was not detained." *Jeffredo*, 599 F.3d at 915.

**IT IS THEREFORE RECOMMENDED** that Respondents' Motion to Dismiss the Petition for Writ of Habeas Corpus **be denied as moot** (Doc. 6).

**IT IS FURTHER RECOMMENDED** that Respondents' Motion to Dismiss the Amended Petition for Writ of Habeas Corpus **be granted** (Doc. 10).

**IT IS FURTHER RECOMMENDED** that Kay Lewis's Amended Petition for Writ of Habeas corpus be **denied and dismissed with prejudice** (Doc. 8).

DATED this 24th day of January, 2013.

_____
David K. Duncan
United States Magistrate Judge

- 11 -